FILED & ENTERED

MAR 03 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>RUBY SIDDIQUI, M.D.,<br><br>        Debtor.<br><br>―――――――――――――――――<br><br>CHRISTINE KELLEY,<br><br>        Plaintiff,<br>  vs.<br><br>RUBY SIDDIQUI, M.D.,<br><br>        Defendant. | Case No. 2:14-bk-19653 RK<br><br>Chapter 7<br><br>Adv. No. 2:14-ap-01549 RK<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S ADVERSARY COMPLAINT FOR NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6) AND DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) AND (a)(5)** |

The above-captioned adversary proceeding on the adversary complaint of Plaintiff Christine Kelley ("Plaintiff") asserting claims for non-dischargeability of debt pursuant to 11 U.S.C. § 523(a)(6) and for denial of discharge of Defendant Ruby Siddiqui, M.D. ("Defendant"), Debtor, pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5) came on for trial before the undersigned United States Bankruptcy Judge on April 21, 2016. Sheila Esmaili, of the Law Offices of Michael Jay Berger, appeared for Plaintiff.   No appearance was made for Defendant.

At trial, the court received Plaintiff's Trial Exhibits P-1 through P-62, including Plaintiff's trial declaration, Electronic Case Filing Number ("ECF") 26, filed on December 2, 2015 and offered as Plaintiff's Trial Exhibit P-62, into evidence.  *Audio Recording of Trial,* April 21, 2016 at 9:32-9:34 a.m.  However, the court did not receive into evidence the Supplemental Declaration of Plaintiff Christine Kelley, ECF 43, filed on April 20, 2016 (due on March 31, 2016), and Plaintiff Christine Kelley's Evidentiary Objections to Defendant Ruby Siddiqui, M.D.'s Trial Declaration, ECF 44, filed on April 20, 2016 (due on April 14, 2016), which were stricken because they were late-filed in violation of the deadlines set forth in the court's Scheduling Order and Order Approving Amended Joint Pretrial Stipulation, ECF 38, filed on February 12, 2016.  *See Audio Recording of Trial,* April 21, 2016 at 9:02-9:05 a.m.  Moreover, the court did not receive Defendant's Trial Declaration, ECF 29, filed on January 4, 2016, into evidence as no party offered it into evidence.  *See Audio Recording of Trial,* April 21, 2016 at 9:01-9:05 a.m. and 9:31-9:42 a.m.

After trial, on May 31, 2016, Plaintiff lodged her Proposed Findings of Fact and Conclusions of Law.  ECF 51.  On August 22, 2016, Defendant lodged objections to Plaintiff's Proposed Findings of Fact and Conclusions of Law and Counter-Proposed Findings of Fact and Conclusions of Law, which were submitted by her counsel, Michael F. Chekian, of Chekian Law Office, Inc.  ECF 53.  On September 1, 2016, Plaintiff filed her Motion to Strike Defendant Ruby Siddiqui's Untimely Objections and Counter-Proposed Findings of Fact and Conclusions of Law Following Trial.  ECF 54.  On September 13, 2016, Defendant, by her attorney, Mr. Chekian, filed a reply to the motion to strike.  ECF 56.  Afterwards, the court took these matters under submission.

Having considered the witness testimony and exhibits received at trial (which included three ring binders of exhibits totaling 1,400 Bates stamped pages of documents, most of which were not referred to, let alone discussed, by Plaintiff in her proposed findings of fact and conclusions of law), and the other matters in evidence, the court

2

hereby makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure.[1]

### **FINDINGS OF FACT**

Findings of Fact 1 through 40 are undisputed facts that were established through the Amended Pre-Trial Stipulation, ECF 36, filed on February 1, 2016, which the parties jointly filed and which the court approved through its Scheduling Order and Order Approving Amended Joint Pretrial Stipulation, ECF 38, filed and entered on February 12, 2016:

1. Jurisdiction of this adversary proceeding is conferred on this Court by 28 U.S.C. §§ 157 and 1334, and Federal Rules of Bankruptcy Procedure[ ] 5005, 7001(6), and 7002.

2. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Complaint is brought pursuant to 11 U.S.C. § 523(a)(6) and § 727(a)(2), (a)(3), (a)(4), (a)(5) and Federal Rule of Bankruptcy Procedure 7001.

3. On May 16, 2014, Defendant filed a voluntary Chapter 7 bankruptcy petition, Case Number 2:14-bk-19653.

4. On August 19, 2014, Plaintiff initiated the Instant Adversary Proceeding, case no. 2:14-ap-01549, requesting an exception to discharge under Bankruptcy Code § 523(a)(6), and a denial of discharge under Bankruptcy Code § 727(a)(2), (a)(3), (a)(4), and (a)(5)

5. Defendant was a physician licensed by the Medical Board of California. Defendant held herself out as possessing that degree of care, skill, ability, training and learning common to psychiatrists who practice in the community.

---

[1] Any findings of fact that should be properly characterized as conclusions of law will be considered as such, and any conclusions of law that should be properly characterized as findings of fact will be considered as such.

6. In or around September 2007, Plaintiff consulted with Defendant for the purpose of obtaining psychiatric treatment because Plaintiff was dealing with relationship issues and anxiety.

7. Plaintiff began intense psychiatric treatment with Defendant, which included psychotherapy in Defendant's office, psychotherapy in Defendant's home and group psychotherapy, the latter of which ended in or around February 2009.

8. Defendant wrote prescriptions for drugs to treat Plaintiff for various diagnosed psychiatric disorders, and placed Plaintiff on disability.

9. Defendant rendered psychiatric services to Plaintiff until on or about September 2010.  Defendant's final prescription for Plaintiff was written in September 2010.

10. In January 2009, Defendant placed Plaintiff on state disability, and then in May 2010, Defendant placed Plaintiff on Social Security disability.

11. During the course of the aforementioned treatment of Plaintiff by Defendant, Defendant agreed to diagnose and treat Plaintiff's emotional problems, and to do all things necessary and proper in connection therewith, thus establishing the relationship of psychiatrist and patient between said Defendant and Plaintiff.

12. The State Court Judgment awarded Plaintiff a total award of $602,500.00.

13. On October 13, 2011, Plaintiff filed a Complaint against Defendant in the Los Angeles Superior Court entitled *Christine Kelley v. Ruby Siddiqui, M.D., and Does 1 through 20, inclusive,* Case No. SC 114484.

14. On April 7, 2014, the [Los Angeles Superior] Court entered a judgment against Defendant in the amount of $602,500.00 [this court notes that this finding of fact is somewhat duplicative of Finding of Fact 12 above].

15. One month following the judgment against Defendant, the Defendant filed a chapter 7 bankruptcy.

16. On May 16, 2014, Defendant filed a voluntary Chapter 7 bankruptcy petition entitled *In re: Ruby Siddiqui,* Case Number 2:14-bk-19653.

4

17. On June 20, 2014, Plaintiff's chapter 7 bankruptcy Counsel and Plaintiff's Counsel both attended Defendant's Meeting of Creditors.

18. The chapter 7 trustee continued the Meeting of Creditors to July 11, 2014 and requested Defendant to produce records regarding these undisclosed preferential transfers and statements from her stock account.

19. On August 19, 2014, Plaintiff initiated the Instant Adversary Proceeding, case no. 2:14-ap-01549, to request an exception to discharge under Bankruptcy Code § 523(a)(6), and a denial of discharge under Bankruptcy Code § 727(a)(2), (a)(3), (a)(4), and (a)(5) (AP docket no. 1).

20. On October 5, 2014, Defendant served Plaintiff with a Request for Interrogatories and Document Production ("Request for Discovery"). Defendant's responses to Plaintiff's Requests for Discovery were due January 30, 2015.

21. On November 12, 2014, Plaintiff submitted a complete response to Defendant's Request for Discovery and produced all relevant and available documents to Defendant.

22. On December 18, 2014, Plaintiff served Defendant with Plaintiff's Request for Interrogatories, Admissions, and Production of Documents ("Request for Discovery"). Defendant's responses to Plaintiff's Requests for Discovery were due January 30, 2015.

23. On January 30, 2015, Plaintiff received Defendant's document production, but did not receive Defendant's responses to Plaintiff's Interrogatories.

24. On May 1, 2015, Plaintiff sent Defendant the First Meet and Confer letter, requesting Defendant to respond to Plaintiff's request for interrogatories and supplement Defendant's document production, on or before May 18, 2015.

25. On May 18, 2015, Defendant still failed to provide any supplemental response to Plaintiff's request for discovery.

26. On June 16, 2015, Plaintiff agreed to a Stipulation Continuing Hearing for Pre-Trial Conference (docket no. 19), since Defendant's discovery responses were due

1    January 30, 2015, and that Defendant's responses to interrogatories and document

2    production were still outstanding, and that Defendant intended to supplement them.

3        27. Pursuant to this Stipulation, Plaintiff agreed to extend the deadline for

4    Defendant to supplement her discovery responses to July 1, 2015.

5        28. On July 1, 2015, Plaintiff received no discovery responses from Defendant.

6        29. At this point, Plaintiff and Defendant had scheduled a Mediation Conference

7    for July 31, 2015. In the spirit of mediating and hopefully settling, Plaintiff's Counsel told

8    Defendant's Counsel that Plaintiff will not compel Defendant to respond to discovery prior

9    to the mediation conference, in hopes of reaching a settlement.

10        30. On July 31, 2015, Plaintiff and Defendant appeared to what proved to be an

11    unsuccessful mediation conference.

12        31. On August 25, 2015, sometime after 7:00 pm, Defendant's Counsel emailed

13    Plaintiff's Counsel approximately 30 emails, each email containing document production

14    that Plaintiff already received previously, with the exception of missing TD Ameritrade

15    bank statements.

16        32. This provided Plaintiff's Counsel a very short timeframe to review discovery

17    prior to drafting the instant pre-trial stipulation.

18        33. Unfortunately, Defendant still had not responded to Plaintiff's request for

19    interrogatories.

20        34. On September 10, 2015, Plaintiff sent a *second* Meet & Confer Letter

21    requesting responses to Plaintiff's Request for Interrogatories, and regarding the

22    deficient, incomplete and unsatisfactory document production from Defendant, requesting

23    Defendant supplement her document production, no later than September 18, 2015.

24        35. On September 15, 2015, a Joint Pre-Trial Stipulation was filed by Plaintiff and

25    Defendant (docket no. 22). A Pre-Trial Conference was scheduled on September 29,

26    2015. In that Pre-Trial Conference, the Court noted that there were no objections in the

27

28

1    Pre-Trial Stipulation, and requested Plaintiff and Defendant file an Amended Pre-Trial

2    Stipulation with the objections included.

3        36. On September 29, 2015, Defendant finally provided her responses to

4    interrogatories.

5        37. On December 2, 2015, Plaintiff submitted her Trial Declaration (docket no. 26).

6        38. On December 16, 2015, the deadline for Defendant to submit Trial

7    Declarations on behalf of Defendant pursuant to the Court's Pre-Trial Conference and

8    Scheduling Order, no Trial Declaration by Defendant was filed.

9        39. On December 22, 2015, Plaintiff filed a Notice of Motion and Motion to Strike

10    Defendants Answer and Enter Default Against Defendant, or in the Alternative, to

11    Exclude Defendants Undisclosed Exhibits and Witnesses, due to Defendant's non-

12    responsiveness in preparing for trial. The Court denied this Motion without prejudice and

13    has vacated the trial date set and setting another pre-trial conference for February 9,

14    2016 at 2:00 p.m.

15        40. The total requested by Plaintiff for general and compensatory damages is

16    $602,500, plus attorney fees incurred in bringing forth the instant adversary proceeding.

17        41.  In addition to the undisputed findings of fact set forth above, the court makes

18    the following findings of fact based on the testimony and exhibits received at trial,

19    including Plaintiff's trial declaration as her direct testimony and Plaintiff's Trial Exhibits P-

20    1 to P-62.  In doing so, the court addresses the allegations in Plaintiff's adversary

21    complaint and organizes its remaining findings of fact around the causes of action to

22    which they relate.

23        **Plaintiff's 11 U.S.C. § 523(a)(6) Claim**

24        42. With respect to Plaintiff's claim under 11 U.S.C. § 523(a)(6), in paragraph 33 of

25    the adversary complaint, Plaintiff alleges that "Defendant's misrepresentations were

26    deliberate and intended to cause Plaintiff financial and emotional injury, in order to further

27    Defendant's personal interest." *Adversary Complaint*, ECF 1 at 7, ¶ 33.  However, the

28                                                    7

1  court has reviewed the allegations in the adversary complaint and cannot identify any

2  misrepresentations allegedly made by Defendant to Plaintiff.   Moreover, the court has

3  reviewed Plaintiff's proposed findings of fact and conclusions of law, ECF 51, regarding

4  her claim under 11 U.S.C. § 523(a)(6) to identify any misrepresentations by Defendant to

5  Plaintiff, specifically the proposed conclusions of law, ¶¶ 2-8, relating to this claim, and

6  the court cannot identify any misrepresentations allegedly made by Defendant to Plaintiff.

7       43.  It is possible that Plaintiff in the adversary complaint, if very liberally

8  construed, alleges misrepresentations that were made by Defendant to Plaintiff in that

9  Defendant intentionally misrepresented Plaintiff's psychological condition to Plaintiff when

10  Defendant misdiagnosed Plaintiff, and intentionally and wrongfully encouraged Plaintiff to

11  enter psychiatric treatment and sign up for disability benefits.  In her adversary complaint,

12  Plaintiff does not allege a claim for non-dischargeability of debt based on fraud or

13  misrepresentation under 11 U.S.C. § 523(a)(2)(A), but for willful and malicious conduct by

14  Defendant against her under 11 U.S.C. § 523(a)(6).  The willful and malicious conduct by

15  Defendant towards Plaintiff is allegedly misdiagnosing Plaintiff's psychological condition

16  and placing her on disability.

17       44. In Plaintiff's trial declaration, she testified:

18       16. [I]n 2011, I learned that Defendant had misdiagnosed me and that she
         never should have placed me on disability.  I learned from the Social
19       Security administrative proceedings brought against me in 2011 by
         defendant that Defendant had inaccurately stated to the social security
20       office that I was schizoaffective (something I was never diagnosed with this)
         and stated she was prescribing numerous antipsychotic drugs that have
21       never in fact been prescribed to me.

22       17.  The evaluation reports submitted in relation to the Social Security
         proceeding found me to not be as psychology [sic] ill as Defendant reported
23       me to be when placing me on disability.

24  *Plaintiff's Trial Declaration, Trial Exhibit P-62* at 4.

25       45.  This evidence does not support the allegations of Plaintiff regarding a

26  misdiagnosis of her psychological condition, that Defendant made any

27  misrepresentations to Plaintiff or that Defendant engaged in willful and malicious

28

8

condition by misdiagnosing Plaintiff.  Plaintiff did not submit any admissible, corroborating

testimony of a medical expert witness or documentary evidence demonstrating that

Defendant had diagnosed Plaintiff with a particular disorder that Plaintiff did not have, nor

did Plaintiff provide the court with any copies of the evaluation reports submitted in

relation to her Social Security proceeding indicating that she was misdiagnosed, and

these statements of Plaintiff are not credible because there is no foundation for her

opinion that she was misdiagnosed and are based on inadmissible hearsay regarding

alleged statements and opinions of the Social Security Administration.  Exhibit 1 to

*Plaintiff's Trial Declaration*, *Plaintiff's Trial Exhibit* P-62, is apparently a handwritten letter

of Defendant about Plaintiff's psychological condition to the Social Security

Administration, but there is no proof that any such diagnosis of Plaintiff by Defendant was

inaccurate.

46.  Plaintiff also relies upon Defendant's Trial Declaration, ECF 29, in support of

the allegations of misdiagnosis.  In paragraph 6 of Proposed Conclusions of Law in

Plaintiff's Proposed Findings of Fact and Conclusions of Law, Plaintiff cites Defendant's

Trial Declaration and contends as follows:

> 6.  More shocking, Defendant placed Plaintiff on disability for unclear reasons.  Defendant claims that she did so "because she [Plaintiff] was fired, mentally unstable and completely unpredictable and a possible danger to herself."  *See* Defendant's Trial Declaration, ¶ 19.  However, prior to placing Plaintiff on disability, Defendant states that "there was nothing alarming about her behavior."  *See* Defendant's Trial Declaration, ¶ 13.  If there was nothing alarming about Plaintiff's behavior.  Then why did Defendant place Plaintiff on disability?  Defendant contradicts herself and the evidence indicates that no proper medical evaluation was done on Plaintiff.  Not one single medical document is produced by Defendant, which is surprising because Plaintiff was Defendant's patient for three years.  As a result of being on disability, the financial toll on Plaintiff's income is indisputable.  Plaintiff's income went from $110,000.00 in 2007 and 2008 to less than $3,500.00 from 2009 to 2011.  Such conduct goes beyond all bounds of decency and shocks the conscience of a reasonable person, especially since it was being committed by a medical professional.

ECF 51 at 8, Proposed Conclusions of Law, ¶ 6.  However, this evidence relied upon by

Plaintiff regarding an alleged misdiagnosis by Defendant is inadmissible because

Defendant's Trial Declaration was not received into evidence since no one offered it into

evidence, and thus, these contentions are unsupported.  It is improper for a party to cite

and rely upon evidence not in the record.  In summary, the court has thoroughly reviewed

the evidentiary record and determines that the evidence does not show that Defendant

intentionally misrepresented Plaintiff's psychological condition to Plaintiff, that Defendant

intentionally misdiagnosed Plaintiff, or that Defendant intentionally and wrongfully

encouraged Plaintiff to enter psychiatric treatment or sign up for disability benefits.

47.   In addition to the foregoing contentions, in paragraph 34 of the adversary

complaint, Plaintiff alleges that Defendant engaged in the following willful and malicious

conduct to support her claim under 11 U.S.C. § 523(a)(6):

> 34. As alleged in paragraphs 18 through 23, all of the acts of Defendant
> were done and committed with the intent to cause Plaintiff severe emotional
> distress and/or were of such an outrageous character as to be beyond all
> bounds of decency and to shock the conscience of a reasonable person.  In
> doing the despicable acts complained of herein, Defendant acted with
> oppression, fraud, malice and conscious disregard of the safety and welfare
> of plaintiff.  Defendant knew that her acts exposed Plaintiff to a foreseeable
> risk of serious and grievous harm, and Plaintiff was injured as a result of
> said conduct.

*Adversary Complaint* at ¶ 34.  In paragraphs 18 through 23 of the adversary

complaint, Plaintiff alleges the following:

> 18. Defendant crossed professional boundaries with the Plaintiff, while she
> was a patient.   Defendant had Plaintiff work for her in an
> administrative/personal capacity.   Plaintiff served as Defendant's driver,
> including driving Defendant to her own psychiatric appointments.
>
> 19. Defendant had Plaintiff clear her apartment and run interference for her
> with her other patients.   In April 2010, Defendant signed a lease for the
> apartment where Plaintiff lived.   Defendant wrote off the apartment as a
> third office, and Plaintiff was listed as a tenant on the lease.
>
> 20. All of the acts of Defendant listed below were done and committed with
> the intent to cause Plaintiff severe emotional distress and/or were of such
> an outrageous character as to be beyond all bounds of decency and to
> shock the conscience of a reasonable person.  In doing the despicable acts
> complained of herein, Defendant acted with oppression, fraud, malice and
> conscious disregard of the safety and welfare of plaintiff.

10

21. Defendant knew that her acts would expose Plaintiff to a foreseeable risk of serious and grievous harm, and Plaintiff was injured as a result of said conduct as more fully set forth below.

22. Such conduct included, but was not limited to the following:

    a. Defendant insisted that Plaintiff do personal chores and favors for her outside of the office in exchange for continued psychiatric treatment;

    b. Defendant insisted Plaintiff assist her in forming a business designed to "get revenge on your ex." When Plaintiff declined, Defendant threatened Plaintiff with the termination of psychiatric services and disability payments;

    c. Defendant attempted to force Plaintiff to extort money from Plaintiff's then boyfriend and to conduct surveillance on someone else who was Defendant's psychiatric patient. When Plaintiff refused, defendant threatened Plaintiff that Defendant would turn Plaintiff into the Internal Revenue Service and Social Security; and

    d. Defendant billed for services never rendered to Defendant, including many sessions that never occurred.

23. Plaintiff has suffered psychological and emotional injury and harm, including not only the immediate distress caused by Defendant and her conduct, but also long-term psychological injuries which were to a large extent only latent at the time of the wrongful conduct, and which have developed and occurred, and will in the future continue to develop and occur in Plaintiff, all to Plaintiff's general damages. Plaintiff has further suffered an exacerbation of any emotional difficulties which were pre-existing the harmful treatment she received from Defendant.

48. Regarding these allegations—that Plaintiff worked for Defendant in an administrative or personal capacity, served as Defendant's driver, cleared Defendant's apartment, lived in an apartment that Defendant signed a lease for, did personal chores and favors for Defendant, that Defendant insisted that Plaintiff assist Defendant in forming a business designed to "get revenge on your ex", that Defendant attempted to force Plaintiff to extort money from Plaintiff's then boyfriend and to conduct surveillance on one of Defendant's other psychiatric patients— the court makes the following findings of fact:

49.   The evidence shows that as stated in Plaintiff's Trial Declaration, Plaintiff worked for Defendant in an administrative or personal capacity.  *Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62 at 4, ¶ 18.*

50.   The evidence does not show that Plaintiff served as Defendant's driver.  The court has reviewed Plaintiff's testimony in her trial declaration and there was no testimony of Plaintiff driving Defendant.  *See Plaintiff's Trial Declaration, Plaintiff Trial Exhibit P-62.*

51.   The evidence does not show that Plaintiff cleared [cleaned?] Defendant's apartment.  The court has reviewed Plaintiff's testimony in her trial declaration and there was no testimony of Plaintiff clearing [cleaning?] Defendant's apartment. *See Plaintiff's Trial Exhibit P-62.*

52. The evidence shows that as stated in Plaintiff's Trial Declaration, Defendant entered into a lease agreement whereby Defendant's business was listed as the owner on the lease and Plaintiff was listed as a resident.  *Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62 at 4-5, ¶ 20.*

53.   The evidence does not show that Plaintiff did personal chores and favors for Defendant.  The court has reviewed Plaintiff's testimony in her trial declaration and there was no testimony of Plaintiff doing personal chores or favors for Defendant.  *See Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62.*

54. The evidence does not show that Defendant insisted that Plaintiff assist Defendant in forming a business designed to "get revenge on your ex."   The court has reviewed Plaintiff's testimony in her trial declaration and there was no testimony of Defendant insisting that Plaintiff assist Defendant in forming a business designed to "get revenge on your ex."  *See Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62.*

55. The evidence shows that as stated in Plaintiff's Trial Declaration, Defendant requested that Plaintiff get $20,000 from Plaintiff's boyfriend, but the evidence also shows that Plaintiff did not agree to this.  *Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62 at 6, ¶ 20.*

56. The evidence does not show that Defendant attempted to force Plaintiff to extort money from Plaintiff's then boyfriend and to conduct surveillance on one of Defendant's other psychiatric patients.  The court has reviewed Plaintiff's testimony in her trial declaration and there was no testimony of Defendant attempting to force Plaintiff to extort money from Plaintiff's then boyfriend and to conduct surveillance on one of Defendant's other psychiatric patients.  *See Plaintiff's Trial Declaration, Plaintiff's Trial Exhibit P-62.*

57. In paragraph 7 of Proposed Conclusions of Law in Plaintiff's Proposed Findings of Fact and Conclusions of Law, ECF 51 at 8-9, Plaintiff contends that Defendant engaged in the following willful and malicious conduct to support her claim under 11 U.S.C. § 523(a)(6):

> 7. In doing the despicable acts complained of herein, Defendant acted with oppression, fraud, malice and conscious disregard of the safety and welfare of plaintiff.  Such conduct included, but was not limited to the following: (1) Defendant insisted that Plaintiff do personal chores and favors for her outside the office in exchange for continued psychiatric treatment; (2) Defendant insisted Plaintiff assist her in forming a business designed to "get revenge on your ex."  When Plaintiff declined, Defendant threatened Plaintiff with the termination of psychiatric services and disability payments; (3) Defendant attempted to force Plaintiff to extort money from Plaintiff's then boyfriend and to conduct surveillance on someone else who was Defendant's psychiatric patient.  When Plaintiff refused, Defendant threatened Plaintiff that Defendant would run Plaintiff into the Internal Revenue Service and Social Security; and (4) Defendant billed for services never rendered to Defendant, including many sessions that never occurred. *See* Plaintiff's Trial Declaration, ¶ 19.  *See also,* Exhibit "3" to Plaintiff's Trial Declaration.

*Plaintiff's Proposed Findings of Fact and Conclusions of Law,* ECF 51 at 7-8, Conclusions of Law, ¶ 7.  The only evidence cited for the contentions of Proposed Conclusions of Law, ¶ 7, consisted of Plaintiff's Trial Declaration, ¶ 19, and Exhibit 3 attached thereto.  In paragraph 19 of Plaintiff's trial declaration, she testified:

> 19. Early into my treatment period, Defendant would invite me over whenever I was feeling anxious or could not sleep.  I believed this to be Defendant being a kind friend at all hours.  However, I later learned that Defendant was billing these "friendly" visits as individual treatment sessions by Defendant.  Attached hereto as Exhibit "3" is a true and correct copy of

Defendant's bill to my health insurance carrier for a total amount of $41,560.00.

*Plaintiff's Trial Declaration, Trial Exhibit P-62* at 4.  The court determines that Plaintiff has not shown by a preponderance of the evidence that the conduct of Defendant as a psychiatrist charging Plaintiff's health insurance carrier for counseling sessions for her patient, Plaintiff, at Defendant's home described in paragraph 19 of Plaintiff's Trial Declaration constitutes a willful and malicious injury contemplated under 11 U.S.C. § 523(a)(6) because Defendant giving Plaintiff treatment at her home does not seem outrageous, or even extraordinary.  No other evidence was cited to by Plaintiff in her proposed findings of fact and conclusions of law to support the other allegations of Proposed Conclusions of Law, ¶ 7.  The other contentions of Proposed Conclusions of Law, ¶ 7, are identical to those alleged in paragraphs 18 through 23 and 34 of the adversary complaint, which as discussed above are not supported by sufficient evidence.

58.  The court has thoroughly reviewed the evidentiary record and the totality of the evidence regarding whether Defendant committed the above-described acts with the intent to cause Plaintiff severe emotional distress, whether such acts were of an outrageous character as to be beyond all bounds of decency and to shock the conscience of a reasonable person, and whether such acts were done with oppression, fraud, malice and conscious disregard of the safety and welfare of Plaintiff, does not support a finding of willful and malicious conduct by Defendant towards Plaintiff.

59. The only other evidence submitted by Plaintiff related to these allegations of willful and malicious acts by Defendant against Plaintiff consisted of copies of Plaintiff's state court complaint and corresponding docket and judgment.  *Plaintiff's Trial Exhibits P-1 through P-3*.  Nonetheless, for purposes of ruling on issues of collateral estoppel herein, the court finds that the state court judgment was a default judgment based upon a complaint that pleaded causes of action for professional negligence, breach of fiduciary duty, and intentional interference of emotional distress and that the state court in its judgment did not make any express findings that can support the allegations of willful and

malicious conduct as described above.  *Plaintiff's Trial Exhibits P-2 and P-3, Complaint for Damages, Christine Kelley v. Ruby Siddiqui, M.D., et al., Case No. SC114484 (Superior Court of California, County of Los Angeles, complaint filed on October 13, 2011)* and *Notice of Entry of Judgment in favor of Plaintiff, Christine Kelley v. Ruby Siddiqui, M.D., et al., Case No. SC114484 (Superior Court of California, County of Los Angeles, notice filed on April 2, 2014).*

**Plaintiff's 11 U.S.C. § 727(a)(2) Claim**

60.  In the adversary complaint, Plaintiff alleges that within one year of the petition date, and with the intent to hinder or delay Plaintiff, Defendant transferred, removed, or concealed property of the estate, and/or she has concealed property of the estate as set forth in paragraph 29 of the adversary complaint.  *Adversary Complaint* at 8, ¶ 36.  In paragraph 29 of the adversary complaint, Plaintiff alleged the following:

> 29. On June 20, 2014, Plaintiff's Counsel attended Defendant's Meeting of Creditors, where Defendant admitted, on the record, her failure to disclose truthful and accurate information in her schedules, including, but not limited to the following:
>
> a. At the Meeting of Creditors, Defendant admitted to having had a sewing machine worth $20,000.00, and stated she gave it away when she had a "bipolar episode." Defendant failed to disclose this asset in her schedules.
>
> b. At the Meeting of Creditors, Defendant admitted to having had diamonds and stated she gave it away when she had a "bipolar episode." Defendant failed to disclose this asset in her schedules.
>
> c. At the Meeting of Creditors, Defendant admitted to having had other contents in her condominium that she gave away when she had a "bipolar episode." Defendant failed to disclose these assets in her schedules.
>
> d. At the Meeting of Creditors, Defendant stated she "donated" the above assets to the Salvation Army, but when asked to produce receipts to prove it, she stated she had no receipts.
>
> e. When Plaintiff's Counsel suggested she try to obtain receipts from the Salvation Army, Defendant changed her story and stated she "donated" to different Salvation Army stores – so obtaining any proof would not be possible.
>
> f. Defendant again changed her story, and stated she had also donated some of the above assets to a "friend". However,

15

Defendant's SOFA does not disclose any "other property...transferred either absolutely or as security within two years immediately preceding the commencement of this case."

g. Defendant further discloses on her Schedule B that she has interest in a "collection of books, CDs, DVDs, [and] Debtor's own art work" in the amount of $500.00, yet in the Meeting of Creditors, Defendant admitted to have a camera. Defendant intentionally failed to disclose this asset in her schedules.

h. Defendant's Schedule J states she makes monthly payments of $1,000.00 to "[s]upport [o]f [f]amily [i]n Pakistan," yet in the Meeting of Creditors, Defendant admitted she had stopped sending money to her family in Pakistan three months prior to filing the Instant Bankruptcy, contrary to what is stated in her schedules – which shows her intent to transfer assets of the estate.

i. On Defendant's schedule B(2), she claims to have $500.00, in a TD Waterhouse account. However, in the Meeting of Creditors, Defendant admitted that the previous balance of the TD Waterhouse account was over $300,000.00. When asked what she did with that money, she stated she "lost" it all. Again, Defendant's SOFA does not disclose any "other property...transferred either absolutely or as security within two years immediately preceding the commencement of this case."

*Adversary Complaint* at 6-7, ¶ 29.

61. In paragraphs 11 and 12 of Proposed Conclusions of Law in Plaintiff's Proposed Findings of Fact and Conclusions of Law, ECF 51 at 9-11, Plaintiff contends that Defendant engaged in the following fraudulent transfers or concealments of property within one year of the petition date, or thereafter, with intent to hinder, delay or defraud creditors to support her claim under 11 U.S.C. § 727(a)(2):

11. It is undisputed (as admitted at the Meeting of Creditors) that Defendant has either transferred or concealed her interests, including (1) over $300,000.00 in a TD Waterhouse account; (2) jewelry and diamonds and diamond tools of an undisclosed value; (3) a sewing machine worth $20,000.00; (4) various contents in her condominium of an undisclosed value; and (5) a camera with an undisclosed value. *Compare* Plaintiff's Trial Exhibit "51" (main bankruptcy schedules) with Plaintiff's Trial Exhibit "6" (341(a) transcript). Despite conceding that Defendant has either transferred or concealed her interests in the above, the Defendant's purported explanation for doing so is that the Defendant is "bipolar." *See* Defendant's Trial Declaration, ¶¶ 6-7. However, such a purported explanation is nonsensical because allegedly being "bipolar" does not equate, or even explain, any transfers or concealment of the property of the bankruptcy estate. Moreover, Defendant has provided no competent or admissible evidence establishing her purported "bipolar" medical condition.

Defendant's only evidence is her own opinion that she is "bipolar," but by admission, her medical license was revoked, so her opinion is not an expert opinion, and thereby inadmissible in this case. *See* Defendant's Trial Declaration, ¶ 27. *See also,* Plaintiff's Trial Exhibits 47-49.

12. The Defendant's pre- petition and post-petition concealments were made with the intent to hinder, delay or defraud her creditors or the Trustee, and as such, her discharge should be denied pursuant to § 727(a)(2). More specifically, Defendant gave inconsistent explanations regarding the Defendant's transfer or concealment of her interests in: (1) over $300,000.00 in a TD Waterhouse account; (2) jewelry and diamonds and diamond tools of an undisclosed value; (3) a sewing machine worth $20,000.00; (4) various contents in her condominium of an undisclosed value; and (5) a camera with an undisclosed value. *Compare* Plaintiff's Trial Exhibit "51" (main bankruptcy schedules) with Plaintiff's Trial Exhibit "6" (341(a) transcript). For instance, at the Meeting of Creditors, the Defendant stated she "donated" the above assets to the Salvation Army, but when asked to produce receipts to provie it, she stated she had no receipts. *See* Plaintiff's Trial Exhibit "6". When Plaintiff's Counsel suggested she try to obtain receipts from the Salvation Army, the Defendant changed her story and stated she "donated" to different Salvation Army stores---so obtaining any proof would not be possible. The Defendant again changed her story, and stated she had also donated some of the above assets to a "friend." However, Defendant's SOFA does not disclose "other property… transferred either absolutely or as security within two years immediately proceding the commencement of this case." *Compare* Plaintiff's Trial Exhibit 51 (main bankruptcy schedules) with Plaintiff's Exhibit  6 (341(a) transcript).

*Plaintiff's Proposed Findings of Fact and Conclusions of Law*, ECF 51 at 9-11,

*Conclusions of Law*, ¶¶ 11 and 12.  The only evidence cited for the contentions of

Proposed Conclusions of Law, ¶¶ 11 and 12, consisted of Plaintiff's Trial Exhibit P-51,

Defendant's Bankruptcy Schedules, Plaintiff's Trial Exhibit P-6, Transcript of 341(a)

Meeting of Creditors, Defendant's Trial Declaration, ¶ 6, 7 and 27, and Plaintiff's Trial

Exhibits P-47-P-49, California Medical Board's Decision and Rulings relating to

Defendant's Suspension and Surrender of License.

62.  Upon review of the evidentiary record, for purposes of Plaintiff's 11 U.S.C. §

727(a)(2) cause of action, the evidence does not show that Defendant transferred any of

the above mentioned assets in paragraph 29a-j within one year of the petition date, May

16, 2014, or thereafter, with the intent to hinder or delay Plaintiff as alleged in paragraph

36 of Plaintiff's adversary complaint, because Plaintiff has failed to prove that Defendant

made such transfers during that time or that Defendant made such transfers with the

intent to hinder or delay Plaintiff.  The court makes the following findings of fact on each

of Plaintiff's allegations in paragraph 29a-j of the adversary complaint:

63. **Paragraph 29a:** Regarding Plaintiff's sewing machine, at her 341(a) meeting

of creditors, Defendant testified that she gave her $20,000.00 sewing machine away "a

couple of years ago" during a bipolar episode.  *Transcript of 341(a) Meeting of Creditors,*

*Plaintiff's Trial Exhibit P-6* at 7 and 12-13.  Defendant's testimony during the 341(a)

meeting of creditors indicates that Defendant did not transfer the sewing machine within

one year of the petition date, or thereafter, and Plaintiff has not provided any other

evidence proving such transfer during the relevant time period.  Moreover, Plaintiff has

failed to provide evidence that such transfer was made with the intent to hinder or delay

creditors.  Defendant's explanation of the transfer during her 341(a) meeting of creditors

that she gave it to a friend who did contractor work at her apartment while she was in a

bipolar episode seems plausible in light of her having been on disability herself since at

least 2012.  *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P-6* at 6-7

and 12-13; *Defendant's Bankruptcy Schedules, Statement of Financial Affairs, Plaintiff's*

*Trial Exhibit P-51* at 31.  Accordingly, the court determines that Plaintiff has not shown by

a preponderance of the evidence that Defendant transferred the sewing machine within

one year of the petition date, or thereafter, with the intent to hinder, delay or defraud

creditors.

64. **Paragraph 29b:** Regarding Defendant's diamonds, Defendant testified at her

341(a) meeting of creditors that she gave away gemstones or diamonds worth about

$1,600 "about two years ago", *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial*

*Exhibit P-6* at 6.  Defendant's testimony during the 341(a) meeting of creditors indicates

that Defendant did not transfer the diamonds within the one year period before the

petition date, or thereafter, and Plaintiff has not provided any other evidence proving

such transfer occurred during the relevant time period.  Moreover, Plaintiff has failed to

provide other evidence that Defendant transferred the diamonds or gemstones with the

1  intent to hinder or delay Plaintiff.  Defendant's explanation of the transfer during her

2  341(a) meeting of creditors that she gave them away during a bipolar episode seems

3  plausible in light of her having been on disability herself since at least 2012.  *Transcript of*

4  *341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P-6* at 6.  Moreover, the value of the

5  diamonds or gemstones is minimal, and Plaintiff has not provided other evidence to show

6  a greater value, and the court finds that given the modest value of these assets, it is not

7  likely that Defendant intended to hinder, delay or defraud creditors as to these assets.

8  Accordingly, the court determines that Plaintiff has not shown by a preponderance of the

9  evidence that Defendant transferred the diamonds within one year of the petition date, or

10 thereafter, with the intent to hinder, delay or defraud creditors.

11         65. **Paragraph 29c:** Regarding the contents of Defendant's condominium,

12 Defendant testified at her 341(a) meeting of creditors that she gave away other contents

13 of her condominium, because Defendant stated that this happened "about a year ago" at

14 the time that the condominium was being foreclosed.  *Transcript of 341(a) Meeting of*

15 *Creditors, Plaintiff's Trial Exhibit P-6* at 8.  Defendant's testimony during the 341(a)

16 meeting of creditors indicates that Defendant did not transfer the contents of her

17 condominium within the one year period before the petition date, or thereafter, and

18 Plaintiff has not provided any other evidence proving that such transfer occurred during

19 the relevant time period.  Defendant's statement of financial affairs indicates that the

20 foreclosure sale was on November 15, 2012, which was over a year before she filed her

21 bankruptcy petition on May 16, 2014, which indicates that the transfer of these assets

22 took place outside the one year period before the petition date, or thereafter.

23 *Debtor's Bankruptcy Schedules* at 32, *Plaintiff's Exhibit P-51*.  Furthermore, Plaintiff has

24 failed to provide other evidence that Defendant transferred the other contents of her

25 condominium with the intent to hinder, delay or defraud creditors.  Defendant's

26 explanation of the transfer during her 341(a) meeting of creditors that she gave the

27 contents of her condominium away to the Salvation Army because the condominium was

28

19

being foreclosed seems plausible because she had to move to a new location and either

had to move them, store them or give them away.  *Transcript of 341(a) Meeting of*

*Creditors, Plaintiff's Trial Exhibit P-6* at 7-8 and 12.  Accordingly, the court determines

that Plaintiff has not shown by a preponderance of the evidence that Defendant

transferred the contents of her condominium within one year of the petition date, or

thereafter, with the intent to hinder, delay or defraud creditors.

66. **Paragraph 29d:** Regarding Defendant's donations of assets to the Salvation

Army, Plaintiff contends that her failure to produce receipts to prove these donations

indicates an intent to hinder, delay or defraud creditors as to the transfers of these

assets.  *Adversary Complaint*, ¶ 29d.  Defendant's explanation that she did not keep the

charitable receipts for the Salvation Army donations because she was not "paying any

taxes" on her disability income because she had been on disability for three years seems

plausible because she did not intend to claim any charitable deductions for these

donations since she did not expect income tax liability on her disability income.

*Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P*-6 at 8 and 12.   Plaintiff

did not directly address this statement of Defendant's why Defendant did not have

receipts for her Salvation Army donations.  *Plaintiff's Proposed Findings of Fact and*

*Conclusions of Law*, ECF 51 at 9-11, *Conclusions of Law*, ¶¶ 11 and 12.  Accordingly, the

court determines that Plaintiff has not shown by a preponderance of the evidence that

Defendant's failure to produce donation receipts for her donations to the Salvation Army

proves an intent to hinder, delay or defraud creditors.

67. **Paragraph 29e:** Regarding Plaintiff's allegation that Defendant changed her

story about the Salvation Army donations, the court finds that there is nothing

inconsistent between Defendant's alleged statements in paragraphs 29d and e of the

adversary complaint that she first said that she had no charitable donation receipts and

then said that she would not have any because she donated to different Salvation Army

locations.  First, as noted above, Defendant's explanation that she did not keep the

20

charitable receipts for the Salvation Army donations because she was not "paying any

taxes" because she had been on disability for three years seems plausible because she

was not claiming her charitable donations as deductions against her income tax liability

based on her disability income. *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial*

*Exhibit P-6* at 8 and 12.  Whether Defendant actually had any income tax liability from her

disability income is unclear on this record since no evidence was offered to rebut her

statements, but her statements that she did not are probative of her intent with respect to

asking for receipts from Salvation Army and seem credible to the court under the

circumstances.  Second, Defendant testified at her 341(a) meeting of creditors that she

made donations to the Salvation Army in Valencia, California, but also to other people,

including Renzo Kuniyo, whom she gave the sewing machine. *Id.* at 12-13.  The court

determines that Defendant's statements seem credible in that she was repaying Renzo

Kuniyo for work that he did for her at her condominium and such statements were not

inconsistent as argued by Plaintiff in that Defendant stated that she made donations to

the Salvation Army in Valencia and that she later remembered giving items to other

people, including the sewing machine to Renzo Kuniyo. *Id.*  The court determines that

this evidence as to the purported inconsistent explanations by Plaintiff is insufficient to

show by the preponderance of the evidence that Defendant acted with an intent to hinder,

delay or defraud creditors with respect to the donation of assets she made to the

Salvation Army or the transfer of the sewing machine or that Defendant attempt to

conceal these transfers of assets.

68. **Paragraph 29f:** Regarding Plaintiff's allegation that Defendant changed her

story and donated "some of the above assets" to a "friend," for purposes of 11 U.S.C. §

727(a)(2) claim, the court notes that Defendant's statements were made during her

testimony at the 341(a) meeting of creditors. *Transcript of 341(a) Meeting of Creditors,*

*Plaintiff's Trial Exhibit P-6* at 6-9 and 12.  It appears to the court that Defendant during

her testimony was clarifying where these assets went as she stated that they did not all

21

go to the Salvation Army, but also to "some other people." *Id.* at 12.  Defendant  testified

that the sewing machine went to a man named Renzo Kuniyo, who did work at her house

and the machine was "kind of a payment" for the work and that she "wasn't thinking right"

(i.e., during a bipolar episode). *Id.*  In the court's views, these statements made by

Defendant during her 341(a) meeting testimony are inconclusive about her intent to

hinder, delay or defraud creditors because there were no followup questions or testimony

about other assets given to parties other than the Salvation Army and Mr. Kuniyo. *Id.* at

6-9 and 12-13.  Plaintiff argues that Defendant's inconsistent statements demonstrate an

intent to hinder, delay or defraud creditors, but the court finds that these alleged

inconsistencies are insufficient to prove such intent, and besides, as discussed earlier,

the evidence indicates that the transfers were outside the one-year period before the

petition date, or thereafter. *Plaintiff's Proposed Findings of Fact and Conclusions of Law*,

ECF 51 at 10-11, *Conclusions of Law*, ¶ 12.

69.  Plaintiff also argues that "the Defendant's SOFA does not disclose any 'other

property . . . transferred either absolutely or as security within two years immediately

preceding the commencement of this case." *Id., citing, Plaintiff's Trial Exhibit P-52 (main

bankruptcy schedules) and Plaintiff's Trial Exhibit P-6 (341(a) transcript)*.  In her

adversary complaint and her proposed findings of fact and conclusions of law, Plaintiff

does not give a precise citation to where in the SOFA, Statement of Financial Affairs, that

Defendant failed to disclose other transfers. *Adversary Complaint,* ¶ 29f; *Plaintiff's

Proposed Findings of Fact and Conclusions of Law*, ECF 51 at 10-11, *Conclusions of

Law*, ¶ 12.  Apparently, Plaintiff refers to Item 10, "Other transfers" on the SOFA, which

asks, "List all other property, other than property transferred in the ordinary course of the

business or financial affairs of the debtor, transfer absolutely or as security within **two

years** immediately preceding the commencement of this case." *Debtor's Bankruptcy

Schedules* at 33, *Plaintiff's Exhibit P-51*.  However, the references to "[o]ther transfers"

and "other property" in Item 10 on the SOFA follows the request for disclosure on Item 7

on the SOFA, "Gifts," which asks, "List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 In value per individual family member and charitable contributions aggregating less than $100 per recipient." *Id.* at 32. This item appears to be the relevant one for the transfers made by Defendant since she made gifts or charitable contributions to Salvation Army, Mr. Kuniyo and others, but as stated earlier, the relevant time period is one year, not two years, before the petition date, and based on the evidence in the record, the gifts or charitable contributions made by Defendant more than a year before the petition date are not reportable on Item 7, "Gifts," nor are they reportable on Item 10, "Other transfers," because they were gifts, including charitable contributions, and not other transfers of property.  Accordingly, the court determines that Plaintiff has not shown by a preponderance of the evidence that Defendant made inconsistent statements or failed to disclose gifts and charitable contributions on her SOFA to demonstrate that she transferred property within one year of the petition date, or thereafter, with the intent to hinder, delay or defraud creditors.

70. **Paragraph 29g:** Regarding Plaintiff's allegation that Defendant owned a camera that Defendant did not list on her schedules, this allegation is irrelevant for purposes of Plaintiff's 11 U.S.C. § 727(a)(2) claim about transfers of property since Plaintiff did not allege that Defendant transferred the camera within one year of the petition date with the intent to hinder or delay creditors despite the argument made in Plaintiff's proposed findings of fact and conclusions of law relating to the 11 U.S.C. § 727(a)(2) claim.  *Plaintiff's Proposed Findings of Fact and Conclusions of Law*, ECF 51 at 9-11, *Conclusions of Law*, ¶¶ 11 and 12.

71. **Paragraph 29h:** Regarding Plaintiff's allegations that Defendant's inconsistent statements in her Schedule J, Expense Statement, states that Defendant made monthly payments of $1,000 to support her family in Pakistan, *Plaintiff's Trial Exhibit P-51* at 27, and Defendant's statements at her 341(a) meeting of creditors that Defendant stopped

sending the payments three months before the meeting, *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P-6* at 5, prove an intent to transfer assets to hinder, delay and defraud creditors.  The evidence indicates that Defendant made monthly support payments of $1,000 to her family within one year of the petition date, which is evidenced by both Defendant's Schedule J and her statement at her 341(a) meeting of creditors.

72.  However, the evidence does not show an intent to hinder, delay or defraud creditors because there is no evidence that such transfers to support her family were outside of Defendant's ordinary course of business.   Defendant's explanation that she was supporting her father and her sister with monthly payments of $1,000 seems plausible in that they had no other source of support other than her.  *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P-6* at 5; *Defendant's Bankruptcy Schedules, Statement of Financial Affairs, Plaintiff's Trial Exhibit P-51* at 27.  Defendant's providing family support to her father and her sister who had no other sources of support seems to this court to be ordinary course of business for her and does not indicate an intent to hinder, delay and defraud creditors.  Plaintiff has failed to provide other evidence that such family support was made with the intent to hinder, delay or defraud creditors.

73. **Paragraph 29i:**  Regarding the allegation in paragraph 29(i), Plaintiff repeated the allegation in paragraph 37 of the adversary complaint, then elaborated on it in paragraph 38 of the complaint:

37.  On Defendant's schedule B(2), she claims to have $500.00, in a TD Waterhouse account.  However, in the Meeting of Creditors, Defendant admitted that the previous balance of the TD Waterhouse account was over $300,000.00. When asked what she did with that money, she stated she "lost" it all. Again, Defendant's SOFA does not disclose any "other property…transferred either absolutely or as security within two years immediately preceding the commencement of this case.

38.  Plaintiff avers that Defendant either: (a) has attempted to conceal her interests in the TD Accounts from Plaintiff, the Court and Debtor's Chapter 7 Trustee; (b) withdrew the majority of the funds from this account immediately before the petition Date, and

24

1
2
3
4
5

> failed to list same as cash on hand in her Schedule B-1; (c) transferred such funds to her family members with the sole purpose of hindering or delaying Plaintiff and her Chapter 7 Trustee from being able to locate and/or seize or attach same; (d) withdrew majority of funds from these accounts and after the Petition Date is holding funds in the name of a family member with the sole purpose of hindering and delaying Plaintiff and her Chapter 7 Trustee from being able to locate and/or to seize or attach the same.

6     74. Plaintiff has not provided evidence that the $300,000 in Defendant's TD

7 Waterhouse Account was transferred within the one year period before the petition date

8 on May 16, 2014 under 11 U.S.C. § 727(a)(2)(A). Plaintiff provided the following limited

9 evidence of Defendant's TD Waterhouse Account balances during the one year

10 preceding the filing of Defendant's petition: the account statements for 04/01/13 through

11 04/30/13, which reflect an opening balance of $24,310.68, disbursements of $6,254.93,

12 and a closing balance of $18,055.93, *Plaintiff's Trial Exhibit P-42, TD Ameritrade Account*

13 *Statements for Ruby Siddiqui,* at Bates stamped page numbers 001115 through 001118;

14 the account statements for 08/01/13 through 08/31/13, which reflect an opening balance

15 of $4,011.18, disbursements of $185.63, and a closing balance of $3,825.58, *Plaintiff's*

16 *Trial Exhibit P-42* at Bates stamped page numbers 001121 through 001123; the account

17 statements for 12/01/13 through 12/31/13, which reflect an opening balance of $593.36,

18 disbursements of $0.00, and a closing balance of $593.37, *Plaintiff's Trial Exhibit P-42* at

19 Bates stamped page numbers 001126 through 001128; the account statements for

20 01/01/14 through 01/31/14, which reflect an opening balance of $593.37, disbursements

21 of $0.00, and a closing balance of $593.38, *Plaintiff's Trial Exhibit P-43* at Bates stamp

22 number 001131-001133; the account statements for 02/01/14 through 02/28/14, which

23 reflect an opening balance of $593.38, disbursements of $0.00, and a closing balance of

24 $593.38, *Plaintiff's Trial Exhibit P-43* at Bates stamped page numbers 001135 through

25 001136; the account statements for 03/01/14 through 03/31/14, which reflect an opening

26 balance of $593.38, disbursements of $0.00, and a closing balance of $593.39, *Plaintiff's*

27 *Trial Exhibit P-43* at Bates stamped page numbers 001143 through 001144; the account

28

statements for 04/01/14 through 04/31/14, which reflect an opening balance of $593.39, disbursements of $0.00, and a closing balance of $593.39, *Plaintiff's Trial Exhibit P-43* at Bates stamped page numbers 001147 through 001148.  This documentary evidence thus indicates that the TD Waterhouse account was substantially diminished one year before the petition date on May 16, 2014, and as of April 1, 2013, the opening account balance was only $24,310.68, which is a far cry from the $300,000 that Plaintiff alleges was unexplainably dissipated.

75.  Moreover, this documentary evidence only lists disbursements of $6,254.93 during April 2013 and $185.63 during August 2013 from April 1, 2013 through April 31, 2014, this ending date right before the petition date of May 16, 2014, and the court could compute total disbursements between April 30, 2013 and August 31, 2013 by looking at the year to date disbursements as of April 30, 2013 in the amount of $22,899.86 and the year to date disbursements as of August 31, 2013 in the amount of $37,130.50, yielding an amount of $14,230.64 in disbursements between April 30, 2013 and August 31, 2013, and taking out the $185.63 during August 2013 already noted, leaves disbursements of $14,045.01 between April 30, 2013 and August 1, 2013.  This evidence of these disbursements do not show that these constitute transfers with an intent to hinder, delay or defraud creditors because there is no evidence of who received the disbursements or transfers, nor is there evidence that the disbursements or transfers were made with any intent to hinder, delay or defraud creditors because there is no evidence that such disbursements or transfers were outside of Defendant's ordinary course of business.  The amounts of these disbursements of $6,254.93, $185.63 and $14,230.64 are relatively modest over five months between April and August 2013 (i.e., an average of $4,097.11 a month), and do not show the large unexplained transfers of up to $300,000 as alleged by Plaintiff.  There is no evidence that such disbursements were not used to pay Defendant's ordinary living or business expenses.  There is a gap in the account statements between April 30, 2013 with a closing balance of $18,055.93 and August 1,

2013 with an opening balance of $4,011.18, but one can determine the amount of the

disbursements from the account during those months, which the court has computed

above, and there is no evidence indicating whether the disbursed funds were or were not

used in Defendant's ordinary living or business expenses.   In the court's view, this

evidence is inconclusive to show any bad intent by Defendant to hinder, delay or defraud

creditors as to these disbursements.

76.   Accordingly, the court determines that the preponderance of the evidence

does not show that Defendant transferred $300,000 in funds, or any portion thereof, from

her TD Waterhouse Account with the intent to hinder, delay or defraud creditors.

**Plaintiff's 11 U.S.C. § 727(a)(3) Claim**

77.   In paragraph 40 of the adversary complaint, Plaintiff alleges that with respect

to the assets described in paragraphs 29 and 30 of the adversary complaint, Defendant

concealed, destroyed, or failed to keep or preserve recorded information from which her

financial affairs might be ascertained. *Adversary Complaint* at 9, ¶ 40.  Further, Plaintiff

in paragraph 41 of her adversary complaint, alleges that at the 341(a) meeting of

creditors, Defendant was instructed by the Chapter 7 Trustee to produce records

regarding undisclosed preferential transfers and statements from her stock account.

*Adversary Complaint* at 9, ¶ 41.

78. Upon review of the evidentiary record, with respect to Plaintiff's 11 U.S.C. §

727(a)(3) cause of action, the court determines that the evidence does not show by a

preponderance that Defendant concealed, destroyed, or failed to keep or preserve

recorded information from which her financial affairs might be ascertained without

justification under all of the circumstances of the case.  Regarding the assets described

in paragraphs 29 and 30 of the adversary complaint, the only relevant allegation for

purposes of Plaintiff's 11 U.S.C. § 727(a)(3) claim is the allegation that Defendant

donated the assets described therein but failed to keep the related records and receipts.

That Defendant gave assets to a charitable organization, the Salvation Army, does not

necessarily indicate that she acted with an intent to hinder, delay or defraud creditors, and may indicate that she just had a charitable purpose in doing so. Such a transfer was not made to a related party or a nominee under Defendant's control which would support an inference of a bad purpose. That Defendant made a charitable donation to a third party, unrelated and well-known, large charitable organization like the Salvation Army without more does not show an intent to hinder, delay or defraud creditors. Defendant stated at her 341(a) meeting of creditors that she had a bipolar episode around the time she donated her sewing machine, diamonds or gemstones and that she donated the contents of her condominium to the Salvation Army when her condominium was being foreclosed, and these events plausibly explain her motivation for making the charitable donation and the gift of the sewing machine. *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial Exhibit P*-6 at 6-8. Based on this record, the court finds that Plaintiff has not shown by a preponderance of the evidence that Defendant's failure to keep the related receipts from the Salvation Army is not justifiable.

79. Further, regarding records of Defendant's TD Waterhouse Account, because a number of the account statements were admitted as part of the evidentiary record through Plaintiff's trial exhibits, *Plaintiff's Trial Exhibits P-32 through P-43,* it cannot be said that Defendant failed to maintain or preserve such records since it appears that either Defendant had the records, which she produced, or that the records were available from TD Waterhouse itself.

80. Moreover, in her Proposed Findings of Fact and Conclusions of Law, Plaintiff contends that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3) because Defendant failed to produce certain documents in response to Plaintiff's requests for production of documents. ECF 51 at ¶ 19, 13-15. Nonetheless, the court has reviewed the evidentiary record and the evidence does not show that Defendant failed to produce such documents. The only evidence provided by Plaintiff in support of this allegation is *Plaintiff's Trial Exhibit P-8*, *Defendant's Responses to Plaintiffs Request*

*for Production of Documents*.  For each request, Defendant responded, "To the extent these documents are available, they will be produced."  No further evidence was admitted regarding what documents were produced or not produced.  Additionally, based on its review of the docket, the court notes that Plaintiff never filed any motion to compel Defendant to produce documents pertaining to such requests.  Accordingly, the court determines that the evidence does not show that Defendant failed to produce the documents alleged in paragraph 19 of Plaintiff's Proposed Findings of Fact and Conclusions of Law.

81.  Accordingly, the court finds that Plaintiff has not shown by a preponderance of the evidence that Defendant concealed, destroyed, or failed to keep or preserve recorded information from which her financial affairs might be ascertained without justification under all of the circumstances of the case in order to establish a claim under 11 U.S.C. § 727(a)(3).

**Plaintiff's 11 U.S.C. § 727(a)(4) Claim**

82.  In the adversary complaint, Plaintiff alleges that Defendant knowingly and fraudulently, in or in connection with this Chapter 7 bankruptcy case, made one or more false oaths.  *Adversary Complaint* at 9, ¶¶ 42-45.  In paragraph 45 of the adversary complaint, Plaintiff alleged the following:

> 45. In her Schedules and SOFA, Defendant's knowing and fraudulent false oaths include, but are not limited to, the following:
>
> > a. On Defendant's schedule B(2), she claims to have $500.00, in a TD Waterhouse account.  However, in the Meeting of Creditors, Defendant admitted that the previous balance of the TD Waterhouse account was over $300,000.00.  When asked what she did with that money, she stated she "lost" it all.  Again, Defendant's SOFA does not disclose any "other property . . . transferred either absolutely or as security within two years immediately preceding the commencement of this case."

83. The court has thoroughly reviewed the evidentiary record and the evidence does not show that Defendant knowingly or fraudulently made false oaths in connection

1  with her bankruptcy case.  Plaintiff has failed to identify specifically where Defendant

2  made a false oath, which necessarily requires proof that a particular asset, liability or

3  transfer should be disclosed on a particular part of Defendant's petition documents, or

4  that Plaintiff made a false oath at a specific time such as at Defendant's 341(a) meeting

5  of creditors.  As to some of the assets referenced in paragraph 29a-i of the adversary

6  complaint, in her Proposed Findings of Fact and Conclusions of Law, ECF 51, Plaintiff

7  has failed to explain where such assets should have been disclosed.  For example,

8  regarding Plaintiff's claims in paragraph 45 of the adversary complaint, there is no

9  evidence that the $300,000 was transferred outside of the ordinary course of business

10  such that it should be disclosed in paragraph 10 of Defendant's Statement of Financial

11  Affairs.

12      84. Further, regarding Plaintiff's allegation that Defendant owned a camera that

13  she did not list on her schedules, the court finds that Plaintiff has failed to prove such by

14  a preponderance of the evidence.  A comparison between Defendant's statements at her

15  341(a) meeting of creditors, *Transcript of 341(a) Meeting of Creditors, Plaintiff's Trial*

16  *Exhibit P-6* at 7, with her Schedule B, *Plaintiff's Trial Exhibit P-51* at 13, does not prove

17  such because there are household goods and furnishings listed on Defendant's Schedule

18  B with a value of $2,000, as well as "sewing machines and supplies" listed in line 8,

19  "Firearms and sports, photographic, and other hobby equipment", both of which could

20  include the camera.  Accordingly, Plaintiff has failed by a preponderance of the evidence

21  to prove that a camera is not included therein.

22      85. Moreover, regarding the monthly payments Defendant made to her family

23  members, it is not clear where such payments should be listed on Defendant's schedules

24  and other petition documents as Plaintiff does not indicate specifically where such

25  disclosures should have been made by Defendant.  Even if Plaintiff meant that such

26  payments should be listed on Defendant's Statement of Financial Affairs, it is not clear

27  where such payments should be listed.  For example, payments to family members, on

28

their face, do not necessarily constitute payments to creditors for purposes of paragraph 3 of the Statement of Financial Affairs, nor are such payments necessarily out of the ordinary course of her financial affairs for purposes of paragraph 10 of the Statement of Financial Affairs.

86. Accordingly, the court determines that Plaintiff has not shown by a preponderance of the evidence that Defendant knowingly and fraudulently, in or in connection with her Chapter 7 bankruptcy case, made one or more false oaths for purposes of 11 U.S.C. § 727(a)(4).

**Plaintiff's 11 U.S.C. § 727(a)(5) Claim**

87. In paragraph 49 of the adversary complaint, Plaintiff alleged that with respect to the assets discussed in paragraphs 29 and 30 of the adversary complaint, Defendant has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet her liabilities. Plaintiff further specifically alleged the following:

> 49. By failing to provide Plaintiff with complete copies of all of her pre-petition and post-petition records concerning all the assets she lost or "donated" when she had a "bipolar episode," such as receipts, or accurately disclosing transfers made in her Schedules and/or SOFA, or providing truthful financial account statements and information, Defendant failed to explain satisfactory [sic] her alleged loss of significant assets or deficiency of assets to meet her liabilities.

88. First, as described below in the court's conclusions of law, the legal standard for a claim under 11 U.S.C. § 727(a)(5) does not require Defendant to provide records to Plaintiff, it requires proof that the bankruptcy pleadings or statement of financial affairs do not reflect an adequate explanation for the disposition or deficiency of the assets. *See Samson v. Retz (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010). Nonetheless, regarding the assets discussed in paragraphs 2, 30 and 49 of the adversary complaint, as explained in more detail below, the evidence does not show that Defendant failed to satisfactorily explain the loss of the sewing machine, the diamonds, other contents in her

condominium, the camera, or the payments to Pakistan, because the loss of such assets was explained on her schedules and amended statement of financial affairs. *Plaintiff's Trial Exhibit P-51* at 27 (listing support payments to family in Pakistan) and *Plaintiff's Trial Exhibit P-53* at 3 (listing transfers of sewing machine, jewelry, sofa, mirror, chair, and cabinet, including donations to the Salvation Army). Regarding the loss of her TD Waterhouse Account funds, Defendant disclosed the current account balance of her TD Waterhouse Account on Defendant's Schedule B, *Plaintiff's Trial Exhibit P-51* at 27, and Plaintiff has failed to provide evidence that the transfers from the account should have been disclosed elsewhere such as on Defendant's statement of financial affairs. For example, Plaintiff has not provided evidence that the transfers from the TD Waterhouse Account were made outside of the ordinary course of business such that they should have been listed on Defendant's Statement of Financial Affairs at paragraph 10. Accordingly, the court finds that the preponderance of the evidence does not show that Defendant's bankruptcy pleadings or statement of financial affairs do not adequately explain the disposition or deficiency of the previously discussed assets.

## **CONCLUSIONS OF LAW**

### **Plaintiff's 11 U.S.C. § 523(a)(6) Claim**

1. Under 11 U.S.C. § 523(a)(6), a debt for willful and malicious injury by an Individual debtor to another or to property of another is excepted from discharge. An injury is "willful" "when it is shown that either the debtor had a subjective motive to inflict injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1208 (9th Cir. 2001). "Willful" intent does not require that the debtor have had the specific intent to injure the creditor, if the act was intentional and the debtor knew that it would necessarily cause injury. *Id.* at 1207. "Willful" means "voluntary" or "intentional," *Kawaahau v. Geiger*, 523 U.S. 56, 61 n. 3 (1998), and so recklessness or negligence is insufficient; the debtor must not only have *acted* willfully, but also *inflicted the injury* willfully. 523 U.S. at 61-62, *citing*

32

1  Restatement (Second) of Torts, § 8A, comment A (1964).  The standard focuses on the

2  debtor's subjective intent, and not "whether an objective, reasonable person would have

3  known that the actions in question were substantially certain to injure the creditor."

4  *Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1145-1146 (9th Cir. 2002) (citations omitted).

5      2.  The "malicious" injury requirement under 11 U.S.C. § 523(a)(6) is separate

6  From the "willful" requirement.  *In re Su*, 290 F.3d at 1146.  An injury is "malicious" if it

7  involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury,

8  and (4) is done without just cause or excuse."  *In re Jercich*, 238 F.3d at 1209, *citing,*

9  *Kawaahau v. Geiger, supra*.  This definition "does *not* require a showing of biblical

10  malice, i.e., personal hatred, spite, or ill-will."  *Murray v. Bammer (In re Bammer*), 131

11  F.3d 788, 791 (9th Cir. 1997) (emphasis in original; citations omitted).  The intent required

12  is the intent to do the act at issue, not the intent to injure the victim.  *Id.*

13      3.  Although not specifically raised as an issue of law in the Amended Pre-Trial

14  Stipulation, ECF 36, which was approved by an order of the court, ECF 38, Plaintiff now

15  argues in her trial brief that the court should apply collateral estoppel or issue preclusion

16  effect to the state court judgment, which awarded Plaintiff $602,500 against Defendant.

17  ECF 46 at 17-19.  This court may give issue preclusion effect to a state court judgment

18  as the basis for excepting a debt from discharge.  *Harmon v. Kobrin (In re Harmon),* 250

19  F.3d 1240, 1245 (9th Cir. 2001), *cited in Tomkow v. Barton (In re Tomkow),* ___B.R. ___,

20  2017 WL 65351, slip op. at *4 (9th Cir. BAP 2017); *see also, Grogan v. Garner*, 498 U.S.

21  279, 284 n.11 (1991); *Younie v. Gonya* (*In re Younie*)*,* 211 B.R. 367, 373 (9th Cir. BAP

22  1997).  Plaintiff as the party asserting issue preclusion has the burden of establishing the

23  threshold requirements.  *In re Harmon,* 250 F.3d at 1240, *cited in, In re Tomkow,* __ B.R.

24  at ____, 2017 WL 65351, slip op. at *4.  "This means providing 'a record sufficient to

25  reveal the controlling facts and pinpoint the exact issues litigated in the prior action.'"

26  *Kelly v. Okoye* (*In re Kelly*), 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110

27  (9th Cir. 1996), *cited in, In re Tomkow,* __ B.R. at ____, 2017 WL 65351, slip op. at *4.

28

"Ultimately, '[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect.'" *Id.* "In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994) (citations omitted).

4. The subject state court judgment was a default judgment entered by a California state court, and thus, it is appropriate to apply California law of issue of preclusion. "California permits application of issue preclusion to an existing judgment: (1) after final adjudication; (2) of an identical issue; (3) actually litigated in the former proceeding; (4) necessarily decided in the former proceeding; and (5) asserted against a party in the former proceeding or someone in privity with a party. *In re Tomkow,* __ B.R. at ___, 2017 WL 65351, slip op. at *4, *citing, DKN Holdings LLC. v. Faerber,* 61 Cal.4th 813, 825 (2015); *see also, In re Kelly*, 182 B.R. at 258.

5. Issue preclusion, or collateral estoppel, may only be applied to a default judgment under California law only to the extent that "the defendant had actual notice of the proceedings and a 'full and fair opportunity to litigate'," and "'*only where the record shows an express finding upon the allegation' for which preclusion is sought.*" *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1124 (9th Cir. 2003) (emphasis added), *citing and quoting, In re Harmon,* 250 F.3d at 1247 and n. 6 and *Williams v. Williams (In re Williams' Estate),* 36 Cal.2nd 289, 223 P.2d 248, 254 (1950). "[T]he express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." *In re Cantrell*, 329 F.3d at 1124, *quoting, In re Harmon,* 250 F.3d at 1248.

6. Although the state court entered a default judgment in favor of Plaintiff and against Defendant, *Plaintiff's Trial Exhibit P-3*, because the state court in its default judgment did not make any express findings, and because the default judgment of the state court was based upon a complaint that pleaded multiple causes of action for professional negligence, breach of fiduciary duty, and intentional interference of emotional

34

distress, *Plaintiff's Trial Exhibit P-2,* which in the absence of express findings means the

state court did not necessarily decide issues of willful and maliciousness since the

judgment could have been based upon any one of the causes of action, including for

professional negligence, which does not require a finding of intent necessary to claim for

willful and malicious injury under 11 U.S.C. § 523(a)(6), the court determines that it

cannot give issue preclusive effect to the state court judgment for purposes of Plaintiff's

claim under 11 U.S.C. § 523(a)(6).  *See* 6 Witkin, *Summary of California Law, Torts,*

Elements of Actionable Negligence, § 835 at 52-53 (2005 and 2016 Supp.), *citing inter*

*alia, Artiglio v. Corning,* 18 Cal.4th 604, 614 (1998).

> 7.  Further, as discussed above in the court's findings of fact, regarding the various

allegations relating to Plaintiff's claim under 11 U.S.C. § 523(a)(6) as set forth in

paragraphs 18-23 and 34 of the adversary complaint, the court's findings of fact are

limited to the following: Defendant worked for Plaintiff in an administrative or personal

capacity, *Finding of Fact 43, supra*; Defendant entered into a lease agreement whereby

Defendant's business was listed as the owner on the lease and Plaintiff was listed as a

resident, *Finding of Fact 46, supra*; and Defendant requested that Plaintiff get $20,000

from Plaintiff's boyfriend, but that Plaintiff did not agree to this, *Finding of Fact 49, supra*.

While such acts may have been atypical in a psychiatrist-patient relationship and were at

least negligent dereliction of duty by Defendant as a psychiatrist to Plaintiff as her patient

as determined in the state court judgment, the court determines that Plaintiff has failed to

prove by a preponderance of the evidence that such acts by themselves were done by

Defendant with a subjective motive to inflict injury to Plaintiff, that Defendant believed that

injury to Plaintiff was substantially certain to occur as a result, that such acts were

wrongful, and that such acts necessarily caused injury to Plaintiff without just cause or

excuse.  Accordingly, the court determines that Plaintiff is not entitled to relief on her

claim under 11 U.S.C. § 523(a)(6).

> ///

1    **Plaintiff's 11 U.S.C. § 727(a)(2) Claim**

2    8.  Under 11 U.S.C. § 727,

3    [t]he court shall grant the debtor a discharge, unless . . . the debtor, with
     intent to hinder, delay, or defraud a creditor or an officer of the estate
4    charged with custody of property under this title, has transferred, removed,
     destroyed, mutilated, or concealed, or has permitted to be transferred,
5    removed, destroyed, mutilated, or concealed[,] (A) property of the debtor,
     within one year before the date of the filing of the petition; or (B) property of
6    the estate, after the date of the filing of the petition.

7    11 U.S.C. § 727(a)(2).

8    9.  A party seeking denial of discharge under 11 U.S.C. § 727(a)(2) must prove

9    two things: "(1) a disposition of property, such as transfer or concealment, and (2) a

10   subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act

11   [of] disposing of the property." *Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240

12   (9th Cir. 1997); *accord, In re Retz*, 606 F.3d at 1200.  Under 11 U.S.C. § 101(54), "The

13   term 'transfer' means . . . (D) each mode, direct or indirect, absolute or conditional,

14   voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in

15   property."  "Those objecting to discharge 'bear [ ] the burden of proving by a

16   preponderance of the evidence that [the debtor's] discharge should be denied."  *In re*

17   *Retz*, 606 F.3d at 1196, *quoting, Khalil v. Developers Surety & Indemnity Co. (In re*

18   *Khalil),* 379 B.R. 163, 172 (9th Cir. BAP 2007), *affirmed,* 578 F.3d 1167, 1168 (9th Cir.

19   2009); *see also, Beverly v. Beverly (In re Beverly)*, 374 B.R. 221, 243 (9th Cir. BAP 2007)

20   ("The burden of proof on an objection to discharge under § 727(a)(2) is preponderance of

21   the evidence."), *affirmed in part and appeal dismissed in part*, 551 F.3d 1092 (9th Cir.

22   2008), *citing inter alia, Grogan v. Garner*, 498 U.S. 279, 289 (1991).

23   10.   "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts

24   should construe § 727 liberally in favor of debtors and strictly against parties objecting to

25   discharge." *In re Retz,* 606 F.3d at 1196, *quoting, Bernard v. Sheaffer (In re Bernard),* 96

26   F.3d 1279, 1281 (9th Cir. 1996).   While "[t]his does not alter the burden on the objector,

27

28

1    [it] rather means that 'actual, rather than constructive intent is required' on the part of

2    debtor." *In re Retz*, 606 F.3d at 1196, *quoting, In re Khalil,* 379 B.R. at 172.

3        11.  As discussed above in the court's findings of fact, the court determines that

4    Plaintiff has not shown by a preponderance of the evidence that Defendant transferred

5    the sewing machine, diamonds, and the other contents of her condominium within one

6    year of the filing of her bankruptcy petition as required under 11 U.S.C. § 727(a)(2)(A).

7    Moreover, regarding these assets as well as the support payments to her family and the

8    transfer of funds in her TD Waterhouse Account, the court determines that Plaintiff has

9    not shown by a preponderance of the evidence that Defendant made these transfers with

10   the intent to hinder, delay or defraud Plaintiff as required by 11 U.S.C. § 727(a)(2).

11   Accordingly, the court determines that Plaintiff has failed to prove by a preponderance of

12   the evidence that Defendant, with the intent to hinder, delay or defraud Plaintiff,

13   transferred or concealed property of the estate within one year of the petition date, and

14   that Plaintiff is not be entitled to relief on her claim under 11 U.S.C. § 727(a)(2).

15       **Plaintiff's 11 U.S.C. § 727(a)(3) Claim**

16       12.  Under 11 U.S.C. § 727(a)(3), the court shall grant the debtor a discharge,

17   unless "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

18   preserve any recorded information, including books, documents, records, and papers,

19   from which the debtor's financial condition or business transactions might be ascertained,

20   unless such act or failure to act was justified under all the circumstances of the case."  "In

21   order to state a prima facie case under Section 727(a)(3), a creditor objecting to

22   discharge must show (1) that the debtor failed to maintain and preserve adequate

23   records, and (2) that such failure makes it impossible to ascertain the debtor's financial

24   condition and material business transaction."  *Lansdowne v. Cox* (*In re Cox*)*,* 41 F.3d

25   1294, 1296 (9th Cir. 1994), *citing Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3rd Cir.

26   1992).  "Once the objecting party shows that the debtor's records are absent or are

27   inadequate, the burden of proof then shifts to the debtor to justify the inadequacy or

28                                         37

nonexistence of the records."  *Id.*, *citing inter alia*, *Meridian Bank v. Alten*, 958 F.2d at 1233.

13.  As discussed above in the court's findings of fact, because the court finds that Plaintiff has not shown by a preponderance of the evidence that Defendant's failure to keep records of her Salvation Army donations was not justifiable, the court determines that as to the charitable donations of the sewing machine, diamonds, and other contents of her condominium to the Salvation Army, Plaintiff has failed to prove by a preponderance of the evidence that she is entitled to relief on her claim under 11 U.S.C. § 727(a)(3).  Regarding disclosure of her TD Waterhouse Account, because Plaintiff has failed to prove by a preponderance of the evidence that Defendant failed to disclose such statements, the court determines that Plaintiff is not entitled to relief under 11 U.S.C. § 727(a)(3).  Furthermore, regarding Defendant's alleged failure to produce certain documents through discovery, because Plaintiff has failed to prove by a preponderance of the evidence that Defendant failed to produce such, the court determines that Plaintiff is not entitled to relief on her claim under 11 U.S.C. § 727(a)(3).  Therefore, the court determines that Plaintiff should not be entitled to relief on her claim under 11 U.S.C. § 727(a)(3).

**Plaintiff's 11 U.S.C. § 727(a)(4) Claim**

14.  Under 11 U.S.C. § 727(a)(4), the court shall grant the debtor a discharge unless, "(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account."   To prevail on an 11 U.S.C. § 727(a)(4) claim, Plaintiff has the burden to prove, by a preponderance of the evidence, that, "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."  *In re Retz*, 606 F.3d at 1197, *citing*, *In re Roberts*, 331 B.R. 876, 882 (9th Cir. BAP 2005).

15.  As discussed above in the court's findings of fact, because the court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant knowingly

1  and fraudulently made a false oath in connection with her bankruptcy case that relates to

2  a material fact, the court determines that Plaintiff is not entitled to relief under 11 U.S.C. §

3  727(a)(4).

4          **Plaintiff's 11 U.S.C. § 727(a)(5) Claim**

5          16.  11 U.S.C. § 727(a)(5) provides that the court shall grant the debtor a

6  discharge, unless "the debtor has failed to explain satisfactorily, before determination of

7  denial of discharge under this paragraph, any loss of assets or deficiency of assets to

8  meet the debtor's liabilities."  Under 11 U.S.C. § 727(a)(5), the creditor objecting to

9  discharge must show (1) the debtor at one time, not too remote from the bankruptcy

10 petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed

11 or order of relief granted, the debtor no longer owned the assets or the assets were

12 deficient to meet the debtor's liabilities; and (3) the bankruptcy pleadings or statement of

13 affairs do not reflect an adequate explanation for the disposition or deficiency of the

14 assets.  *See In re Retz,* 606 F.3d at 1205 (citation omitted).  "Once the creditor has made

15 a prima facie case, the debtor must offer credible evidence regarding the [deficiency of

16 or] disposition of the missing assets."  *See id.,* 606 F.3d at 1189 (citation omitted).

17         17.  As discussed above in the court's findings of fact, because the court finds that

18 the preponderance of the evidence does not show that Defendant's bankruptcy pleadings

19 or statement of financial affairs do not adequately explain the disposition or deficiency of

20 the previously discussed assets, the court determines that Plaintiff has failed to prove her

21 11 U.S.C. § 727(a)(5) claim by a preponderance of the evidence.  Accordingly, the court

22 determines that Plaintiff is not entitled to relief under 11 U.S.C. § 727(a)(5).

23                                    **CONCLUSION**

24         For the foregoing reasons, the court determines that Plaintiff's claims under 11

25 U.S.C. § 523(a)(6), and 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and (a)(5) should be denied.

26 This memorandum decision constitutes the court's findings of fact and conclusions of law

27

28                                        39

1  pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52 of the

2  Federal Rules of Civil Procedure.  A separate judgment is being entered concurrently.

3        By separate order, the court grants Plaintiff's motion to strike Defendant's

4  objections to Plaintiff's proposed findings of fact and conclusions of law and Defendant's

5  counter-proposed findings of fact and conclusions of law since Defendant's objections to

6  Plaintiff's proposed findings of fact and conclusions of law were untimely filed and

7  Defendant's counter-proposed findings of fact and conclusions of law were untimely

8  lodged in violation of the court's post-trial scheduling order requiring such documents be

9  submitted (i.e., any objections to Plaintiff's proposed findings of fact and conclusions of

10  law be filed) no later than June 30, 2016.

11        IT IS SO ORDERED.

12                                          ###

Date: March 3, 2017

_____

Robert Kwan
United States Bankruptcy Judge